UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA  : | |
| : | |
| : | |
| v.  : | No. 21-mj-115 (RMM) |
| : | |
| : | |
| EMANUEL JACKSON,  : | |
| : | |
| Defendant.  : | |

**GOVERNMENT'S MEMORANDUM
IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Emanuel Jackson, be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) [Crime of Violence]. There are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community, pursuant to 18 U.S.C. §§ 3142(e).

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**Factual Background**

**1. The Attack on the United States Capitol on January 6, 2021.**

The United States Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized individuals with appropriate identification are allowed access

1

inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Pence, who is also the President of the Senate, was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Michael Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the U.S. Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, and Vice President Michael Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During the course of the violent protests, several individuals were armed with weapons including bats, pepper spray, sticks, zip ties, as well as bulletproof vests and anti-tear gas masks. During the course of the violent protest, several law enforcement officers were assaulted and injured by these violent protesters while attempting to protect the U.S. Capitol and the individuals inside of the building. These assaults occurred both inside of the Capitol, as well as on the steps outside of the Capitol and the grounds of the Capitol. The defendant, as detailed below, is charged with two instances of assault, as well as other criminal violations.

2. **Emanuel Jackson's Criminal Conduct**

   a. **Assault on Law Enforcement Officer at Senate Wing Entrance**

At around 2:00 p.m., a large crowd of violent protesters climbed the stairs to the U.S. Capitol Building at the Senate Wing entrance on the West side and began striking the windows and doors of the U.S. Capitol with objects and weapons. Several U.S. Capitol and Metropolitan Police Department officers who were in police uniform attempted to restrain the crowd but were eventually overwhelmed. After an initial breach of the Senate Wing entrance on the West side, police officers were able to barricade the door and secure the entrance for a short amount of time. But the crowd began a second assault on that same door, and this crowd included the defendant. He is observed on U.S. Capitol video surveillance footage pushing through the doorway with the

crowd, making a clenched fist and repeatedly striking a U.S. Capitol Police officer on his person while attempting to forcefully enter the building. *See* Govt. Exhibit 1.[1]  As can be clearly observed, the defendant is part of a mob of individuals attacking law enforcement officers who were trying to prevent the unruly crowd from entering the U.S. Capitol, which was closed to the public that day.   United States Capitol Police officers are designated as officers of the United States under 18 U.S.C. 1114.

At approximately 2:48 p.m., the large crowd that included the defendant overpowered the officers and gained entry. One of the first individuals observed entering the doorway is the defendant. He is observed on the surveillance video wearing a black hooded sweatshirt, a tan military-style backpack, and a light blue surgical mask on his face.

### b.  Baseball Bat Assault on Law Enforcement Officers at West Terrace Entrance

At 4:50 p.m., the violent and aggressive crowd continued to confront law enforcement at the West Terrace entrance. The crowd was armed with various weapons and multiple individuals are observed assaulting law enforcement in the entranceway. The defendant is clearly observed in surveillance video of this entrance, wearing the same clothing described above and observed in earlier footage, and armed with a metal baseball bat. The defendant repeatedly strikes a group of both U.S. Capitol and Metropolitan Police Department uniformed officers with the baseball bat. *See* Govt. Exhibits 2 and 3. The officers are shielding themselves with the Plexiglas shields for protection. The defendant, who is alongside another individual who is pummeling law enforcement officers with what appears to me a police helmet, winds up and repeatedly strikes law enforcement

---

[1] The government's video exhibits for the virtual detention hearing are being provided separately to the Court and defense counsel.

officers with the baseball bat. The law enforcement officers are protecting themselves from the defendant's blows with the Plexiglas shields.

In the days following the assault on the U.S. Capitol, law enforcement sent out flyers with photographs of several individuals involved in the violence at the U.S. Capitol on January 6, 2021. The defendant was listed as subject number 31.

During the investigation, law enforcement discovered an open source media video of the incident from January 6, 2021. On the video, the defendant is observed holding and swinging a baseball bat, which matches the shape and appearance of the bat in the surveillance video from the U.S. Capitol Building. *See* Govt. Exhibit 4. Additionally, in a second video discovered on open source media, the defendant is asked questions by an unknown individual, and the defendant admits that he possessed while trying to break through the police line. *See* Govt. Exhibit 5.

### 3. The Defendant's Arrest and Statements Made on January 18, 2021

On January 18, 2021, the defendant voluntarily entered the First District Metropolitan Police Department station. Law enforcement agents explained the defendant's constitutional rights to him and the defendant knowingly waived his rights by signing a Miranda rights card. The defendant admitted to taking part in the violent protest, identified himself in video and photographs shown to him by law enforcement of himself, and confessed to perpetrating the violent conduct described above and evidenced by the videos. Specifically, he identified himself as appearing in the same video clips that are being presented to the Court along with this memorandum. He further admitted that his intention, after attending the rally in front of the White House, was to assist the group effort to halt the counting of the electoral votes and prevent the Electoral College from certifying the results of the presidential election.

4. **Procedural History**

On January 18, 2021, the defendant was charged by complaint with: 1) Assaulting an Officer of the United States, in violation of 18 U.S.C. § 111(a); 2) Assaulting an Officer of the United States with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 111(a) and (b); 3) Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1511(c)(2); 4) Unlawful Entry and Physical Violence on Restricted Building or Grounds, in violation of 18 U.S.C. § 1752 (a) and (b); and, 5) Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2). On January 19, 2021, at the defendant's initial appearance, the government orally moved for the defendant's detention pending trial pursuant to § 3142(f)(1)(A) [Crime of Violence] of the federal bail statute. The Court set this matter for a detention hearing on Friday, January 22, 2021, at 11:30 a.m.

## ARGUMENT

There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. §3142(g). In consideration of these factors, the government respectfully submits that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community.

### Nature and Circumstances of the Offenses Charged

During the course of the January 6, 2021, siege of the U.S. Capitol, multiple law enforcement officers were assaulted by an enormous mob, which included numerous individuals

6

with weapons, bulletproof vests, and pepper spray who were targeting the officers protecting the Capitol.  Additionally, the violent crowd encouraged others in the crowd to work together to overwhelm law enforcement and gain unlawful entry into the U.S. Capitol.

What is extremely troubling about the defendant's conduct is both the severity of his actions and the escalation of his violent assaults. As noted above, shortly after 2:00 p.m. on January 6, 2021, the defendant joined a large mob that substantially outnumbered law enforcement at the Senate Wing Entrance to the U.S. Capitol. The defendant was part of a group that tore out windows, ripped open the blocked entrance, and then physically attacked law enforcement in an effort to gain entry.  The law enforcement officers are in full uniform with the word "police" clearly visible. At approximately 2:48 p.m., the defendant is observed physically striking a law enforcement officer with his fist. The punching continues for several strikes and seconds later, the mob forces their way into the entranceway and overruns the group of law enforcement officers. The defendant's assaultive behavior in part allowed the large mob of individuals to successfully breach the U.S. Capitol, putting additional law enforcement officers and members and staff of Congress at grave risk. The defendant's actions allowed other rioters to commit multiple other criminal acts inside the building.

But that is just the beginning of the defendant's unlawful conduct. Next, shortly before 4:50 p.m. that day, the defendant, who was once again outside the Capitol building, armed himself with a metal baseball bat.  Not content with assaulting law enforcement officers with his fists, the defendant physically assaulted law enforcement officers with the bat in order to regain entry. The defendant is observed repeatedly striking officers with the bat in an effort to disable them and to allow the mob to gain entry to the West Terrace Entrance. The defendant's actions were violent,

criminal, and represented a further dangerous escalation aimed at allowing other violent rioters to unlawfully enter the U.S. Capitol. Officers could have easily been seriously injured, if not killed, by his repeated downward blows with the baseball bat.

During the defendant's post-arrest interview, he clearly articulated that he attended former President Trump's rally earlier that day, and that he joined the thousands of individuals who descended on the U.S. Capitol to protest the election results. During the interview, the defendant stated that his purpose in joining the violent mob was to enter the U.S. Capitol and disrupt the vote count of the Electoral College as it met to certify the results of the 2020 Presidential Election. Thus the defendant combined his criminal intention to interfere with the functioning of Congress with multiple violent assaults – one with a dangerous weapon – on the law enforcement officers trying to protect that function. As a result, the nature and circumstances of these offenses overwhelmingly weigh in favor of detention.

## Weight of the Evidence Against the Defendants

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is also quite strong and compelling. As noted above, the defendant was observed on U.S. Capitol surveillance cameras and police body worn cameras attacking law enforcement officers and unlawfully entering the U.S. Capitol. Addiitonally, social media videos capture the defendant armed with the baseball bat and admitting he possessed the dangerous weapon.  Lastly, in a recorded post-arrest interview, the defendant admits to his unlawful conduct and identifies himself on the videos.  The evidence against this defendant is overwhelmingly strong, and accordingly, the weight of the evidence weighs heavily in favor of detention.

### **Defendants' History and Characteristics**

The government recognizes that the defendant does not have any adult convictions, and just recently turned 20 years old. However, the defendant's actions, as demonstrated by his apparent willingness to engage in the assaultive behavior as part of a violent mob while armed with a metal baseball bat and striking law enforcement officers, should give this Court great concern about the danger he would pose to the community, if released.

### **Danger to the Community and Flight Risk**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. The charged offenses involve assaultive conduct, and the assaults became more violent and dangerous when the defendant armed himself with a baseball bat. He armed himself and assaulted law enforcement with the intent to unlawfully enter the U.S. Capitol and stop the functioning of our government as it met to certify election results. The danger the defendant caused by assisting the violent mob cannot be understated. The defendant was a spoke in the wheel that caused the historic events of January 6, 2021, and he is thus a danger to our society and a threat to the peaceful functioning of our community.

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure that the defendant will comply with court orders and abide by appropriate release conditions.

## **CONCLUSION**

WHEREFORE, the United States respectfully requests that the Court grant the government's motion to detain the defendant pending trial.

Respectfully submitted,

Michael R. Sherwin

Acting United States Attorney
New York Bar No. 4444188

By: _____/s/_____
Gilead Light
DC Bar No. 980839
Gilead.light@usdoj.gov
Anthony Scarpelli
D.C. Bar No. 474711
Anthony.Scarpelli@usdoj.gov
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6880 (Light)
(202) 252-7707 (Scarpelli)

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2021, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

                                          /s/ Gilead Light
                                          GILEAD LIGHT
                                          Assistant United States Attorney