UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :   No. 21-MJ-115 (RMM) |
| | : |
| EMANUEL JACKSON,  | : |
|     Defendant. | : |

**<u>DEFENDANT'S OPPOSITION TO GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION</u>**

Emanuel Jackson, through undersigned counsel, respectfully submits this memorandum in opposition to the government's Memorandum in Support of Pre-trial Detention. *See* ECF 4. The government has requested that Mr. Jackson be detained pursuant to 18 U.S.C. §3142(f)(1)(A).

Mr. Jackson requests that the Court fashion conditions of release which will ensure the safety of any other person and the community, pursuant to 18 U.S.C. §§ 3142(c). Mr. Jackson requests that the Court consider the following arguments, and those presented at a hearing, in making its determination about detention.

**<u>FACTUAL BACKGROUND</u>**

1. **The 'Stop the Steal' Rally**

On January 6, 2021, at approximately 1 p.m. thousands of individuals, including Emmanuel Jackson attended a "Stop the Steal" rally outside of the White House, in Northwest Washington D.C. The President of the United States gave remarks at the rally and referred to the outcome of the 2020 presidential election as "this egregious assault on our democracy." The President described the crowd as people who were "not going to take it any longer." President Trump encouraged the crowd "to walk down Pennsylvania Ave. [...] we're going to the Capitol."

The President roused the crowd by telling them "we will stop the steal" and "you'll never take back our country with weakness, you have to show strength, and you have to be strong… if you don't fight like hell you are not going to have a country anymore."

2. **The Capitol March**

In response to those remarks, individuals marched to the Capitol and became entangled with U.S. Capitol police. Approximately an hour later, enmeshed in a group of hundreds of protestors, Mr. Jackson allegedly struck the helmet of a police officer with his fist. *See* Govt. Exhibit 1. Two and a half hours later, Mr. Jackson allegedly hit the Plexiglass shield of an officer several times with a baseball bat. *See* Govt. Exhibit 2. The government has not alleged that any police officer was physically injured by Mr. Jackson. It is noteworthy that Mr. Jackson is not alleged to have used a bat during his initial encounter with the police.

3. **Voluntary Surrender to Police**

An FBI flyer was sent out with several photographs in the days following the incident and Emanuel Jackson was identified as a suspect. On January 18, 2021, Emanuel Jackson, a recently homeless, young African American man (20), voluntarily turned himself into the FBI building. Mr. Jackson was arrested and transported by an FBI agent to the First District Police Station. While in custody, Mr. Jackson was interrogated and allegedly identified himself in photographs and video. Mr. Jackson identified himself as being present on January 6, 2021, and bizarrely rambled in a social media video, "I am fighting for America--we have been taken over by globalists and the Chinese… I am fighting for America." *See* Govt. Exhibit 5.

4. **Procedural History**

On January 18, 2021, Mr. Jackson was charged by complaint with: 1) Assaulting an Officer of the United States, in violation of 18 U.S.C. § 111(a); 2) Assaulting an Officer of the

United States with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 111(a) and (b); 3) Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1511(c)(2); 4) Unlawful Entry and Physical Violence on Restricted Building or Grounds, in violation of 18 U.S.C. § 1752 (a) and (b); and, 5) Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2).

On January 19, 2021, at the initial appearance, the government orally moved for detention pending trial pursuant to § 3142(f)(1)(A) (Crime of Violence). Mr. Jackson requested to proceed with the detention hearing immediately, which was denied. A detention hearing is scheduled for Friday, January 22, 2021, at 11:30 a.m. On January 21, 2021, the government filed a Memorandum in Support of Pretrial Detention. *See* No. ECF 4. This memorandum is filed in response.

## ARGUMENT

The Court should set conditions of release in this case. The Bail Reform Act ("the Act"), 18 U.S.C. §§ 3142, et. seq., creates four bail options: release on personal recognizance, release on conditions, temporary detention, and pretrial detention. The Act mandates pretrial release on personal recognizance or unsecured bond ("shall order the pretrial release. . . .", 18 U.S.C. § 3142(b)) unless the court determines that release will not reasonably assure the person's appearance or will endanger the safety of any person or the community.

When personal recognizance or an unsecured bond is determined to be inadequate to guarantee appearance or safety, the Act still mandates release ("shall order the pretrial release. . . .", 18 U.S.C. § 3142(c)) subject to specified conditions. The conditions must be the least restrictive conditions necessary to reasonably assure the defendant's appearance and the

community's safety. *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985), cert. denied, 479 U.S. 950 (1986).

There are four factors under §3142(g) that the Court should consider and weigh in determining whether to detain a Mr. Jackson pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. §3142(g). There are several factors in the instant case which demonstrate that there are conditions of release which would both guarantee Mr. Jackson's appearance and assure the safety of the community.

1. **The Nature and Circumstances of the Offense Charged**

It is undisputed that the allegations are serious. Mr. Jackson is accused of making contact with the exterior Plexiglass shield of a police officer. There is no injury alleged to have been caused. This is not to minimize the conduct. However, the nature and circumstances of this offense must be viewed through the lens of an event inspired by the President of the United States. On January 07, 2021, Articles of Impeachment were lodged against the President for willfully making "statements that encouraged—and foreseeably resulted in—imminent lawless action at the Capitol"[1]

2. **Weight of the Evidence**

In a social media era, it is also undisputed that the evidence against Mr. Jackson is significant. However, the government exhibits paint a picture of a mentally challenged teenager[2] inspired by inflammatory propaganda. Apparently unaware that a public video admission to criminal conduct at the U.S. Capitol could strip him of the right to vote, Mr. Jackson oddly

---

[1] https://degette.house.gov/sites/degette.house.gov/files/Impeachment%20Resolution.pdf
[2] Emmanuel Jackson identified himself as 19 years old.

explains that he has "learned a lesson" from not voting in the 2020 presidential election, ("because I thought my vote didn't count") ensuring that he would "vote in future elections." *See* Govt. Exhibit 5.

3. **Defendants' History and Characteristics**

Emanuel Jackson turned twenty years old just 30 days before the incident at the Capitol. In February of 2020, he was on track to graduate from high school in the spring of 2021. However, he was suddenly faced with homelessness after his mother lost her housing. She moved into a women's shelter, while he was forced to temporarily move in with his brother, who was an unwilling caregiver. Shortly after going to live with him, Emmanuel Jackson's brother became overwhelmed with his brother's care.

Mr. Jackson has been diagnosed with several mental health conditions that limit his ability to perform the most basic daily functions.[3]  Mr. has never been arrested and has no criminal history to suggest that he would pose a danger to the community.  Mr. Jackson is a lifelong resident of the metropolitan area and currently resides in a Department of Human Services transitional housing facility.

4. **Danger to the Community and Flight Risk**

Finally, the Court must consider the danger to any person or the community posed by Mr. Jackson's release. Here, while the charges involve allegations of assault, Mr. Jackson does not have any juvenile or adult criminal history to suggest that he has ever been involved in any violence. Mr. Jackson does not even own a cell phone, and this incident appears to have been spontaneous and sparked by the statements made during the 'Stop the Steal' rally. When Mr.

---

[3] Counsel requests the opportunity to 'approach the bench' to provide the Court with additional sensitive medical information.

Jackson was alerted that he was 'wanted' by the FBI he voluntarily surrendered. This is affirmative evidence that Mr. Jackson is not a risk of flight.

      WHEREFORE, given Mr. Jackson's limited mental capacity, youth, and lack of criminal history, the Court should place him in the HISP program, with strict electronic monitoring which will assure the safety of the community and his return to Court.

      Respectfully submitted,
/s/ *Brandi Harden*

_____

Brandi Harden
Bar No. 470706
Counsel for Emanuel Jackson
Harden|Pinckney, PLLC
400 7th Street Suite 604
Washington, DC 20004
bharden@hardenpinckney.com
(202) 390-0374

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2021, I caused a copy of the foregoing motion to be served on counsel of record via ECF.

/s/ *Brandi Harden*
_____
Brandi Harden, Esq.