## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **No. 21-MJ-115 (GMH/BAH)** |
| | : | |
| | : | |
| **EMANUEL JACKSON,** | : | |
| **Defendant.** | : | |

### MOTION FOR REVIEW AND REVOCATION OF A DETENTION ORDER

Emanuel Jackson, by and through counsel, respectfully requests that this Court hear an appeal to review and overturn Magistrate Judge Harvey's decision to grant the government's motion for pretrial detention pursuant to 18 U.S.C. § 3142(f)(l)(A).

In support of this motion, counsel states the following.

### PROCEDURAL HISTORY

On January 18, 2021, Emanuel Jackson was charged by complaint with: 1) Assaulting an Officer of the United States, in violation of 18 U.S.C. § 111(a); 2) Assaulting an Officer of the United States with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 111(a) and (b); 3) Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1511(c)(2); 4) Unlawful Entry and Physical Violence on Restricted Building or Grounds, in violation of 18 U.S.C. § 1752 (a) and (b); and, 5) Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2).

On January 19, 2021, he appeared before Magistrate Judge Michael Harvey for an initial appearance. During the hearing, the government made an oral motion for temporary detention which was granted by the Court. A detention hearing was scheduled for January 22, 2021. On January 21, 2021, the government filed a Memorandum In Support of Pretrial Detention. *See*

ECF No. 4. The defense filed an Opposition to the Government's Memorandum. *See* ECF No. 5.[1] On January 22, 2021, at the detention hearing, the Court granted the government's request for detention pursuant to 18 U.S.C. § 3142(f)(l)(A).  Emanuel Jackson now asks this Court to reconsider the Magistrate Judge's detention order, release him into third-party custody, and allow him to participate in the High-Intensity Supervision Program (HISP) with 24-hour home detention and GPS monitoring.

## FACTUAL BACKGROUND

Beginning in 2020, members of the United States government, most importantly the President of the United States of America—told the public that the only way President Donald Trump could lose the presidential election was if the election was rigged.[2] *See* Trial Memorandum of the United States House of Representatives in the Impeachment Trial of President Donald J. Trump at 6. After President Trump lost the election, he and other government officials said that the presidency had been stolen from him by widespread election fraud.[3] President Trump invited Americans to attend his January 6, 2021, "Stop the Steal" rally and declared "we fight, we fight like hell because if you don't fight like hell you're not going to

---

[1] Counsel requests that ECF No. 5 be incorporated herein.

[2] The Trial Brief can be found at https://judiciary.house.gov/uploadedfiles/house_trial_brief_final.pdf.

[3] See id., Donald J. Trump (@realDonaldTrump), Twitter (Nov. 21, 2020 3:34 PM) (Watch: Hundreds of Activists Gather for 'Stop the Steal' Rally in Georgia https://t.co/vUG1bqG9yg via Breitbart News Big Rallies all over the Country. The proof pouring in is undeniable. Many more votes than needed. This was a LANDSLIDE!"); Donald J. Trump (@realDonaldTrump), Twitter (Nov. 24, 2020 10:45 PM) ("Poll: 79 Percent of Trump Voters Believe 'Election Was Stolen' https://t.co/PmMBmt05AI via @BreitbartNews They are 100% correct, but we are fighting hard. Our big lawsuit, which spells out in great detail all of the ballot fraud and more, will soon be filled. RIGGED ELECTION!"); Donald Trump Speech on Election Fraud Claims Transcript, December 2, Rev (Dec. 2, 2020) (But no matter when it happens, when they see fraud, when they see false votes and when those votes number far more than is necessary, you can't let another person steal that election from you. All over the country, people are together in holding up signs, "Stop the steal."); Donald J. Trump (@realDonaldTrump), Twitter (Dec. 19, 2020 9:41 AM) ([Joe Biden] didn't win the Election. He lost all 6 Swing States, by a lot. They then dumped hundreds of thousands of votes in each one, and got caught. Now Republican politicians have to fight so that their great victory is not stolen. Don't be weak fools!).

have a country anymore. You'll never take back our country with weakness "[y]ou have to show strength." *Id*. at 21.

On January 6, 2021, Emmanuel Jackson caught the bus, attended the "Stop the Steal" rally, and at the urging of the President—walked "down Pennsylvania Avenue" to the Capitol. Emanuel Jackson attended the rally alone, wore a tan school backpack, had no weapons, and made no attempts to conceal his face or identity. Emanuel Jackson owns no cell phone and is not alleged to have communicated with any other attendees, before, during, or after the rally. Although Emanuel Jackson is seen in videos with a bat, there is no evidence that he owned, purchased, or brought it with him to the rally.

At the time of this event, Emmanuel Jackson was a homeless, 20-year-old high school student. A "super senior,"[4] with Autism, an IQ of 75, and a processing speed index of 62.[5] For the past nine years, Emanuel Jackson has remained enrolled in a school for students with intellectual disabilities. Counsel has confirmed that Emanuel Jackson will be allowed to continue with school and graduate, should the Court decide to release him into the High-Intensity Supervision Program. This is Emanuel Jackson's first arrest, he has no history of violent behavior, and he is not a member of any anti-government, hate, or militia-style groups.

When he learned of the Federal Bureau of Investigation's (FBI) interest in him, Emanuel Jackson walked to the headquarters and surrendered himself. It is undisputed that from January 6, 2021, to January 18, 2021, his name and identity were unknown to the FBI.[6] The agents he initially encountered outside of the building repeatedly told him that there was no warrant for his arrest. After showing the agents the FBI flyer on social media, Emanuel Jackson was taken into

---

[4] *See* Attchment A (filed under seal).
[5] Id. at 2.
[6] See ECF No. 1 at 3. "The defendant was listed as subject 31."

custody and driven to MPD's First District police station. At the station, he was taken into a small room, interrogated by FBI Agent Riley Palmertree, and shown several photos and videos from the Capitol. After identifying himself in the photos, Emanuel Jackson was taken to Central Cell Block for presentment in United States District Court.

## ARGUMENT

### A. Review of the Magistrate Judge's Order

This Court has the authority to review the Magistrate Judge's detention order pursuant to 18 U.S.C. § 3145(a)(1). The Court should review the Court's January 22, 2021, findings *de novo*. *United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018) (citing *United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017)). The lower court's factual findings are reviewed for clear error. *United States v. Smith*, 79 F.3d 1208 (D.C. Cir. 1996); *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). In other words, this Court must determine whether the Magistrate Judge clearly erred when he found that the government established by clear and convincing evidence that no combination of conditions of release would protect the safety of the community and found that the government established by a preponderance of the evidence that no combination of conditions of release could assure Emanuel Jackson's return to court. *Id*. at 96.

### B. The Applicable Legal Standard

The Bail Reform Act of 1984, outlines the "carefully limited exception[s]" to the long-recognized principles by the Supreme Court that "[i]n our society, liberty [and not pre-trial detention] is the norm." *United States v. Salerno*, 481 U.S. 739, 755 (1987). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the

defendant." *Id*. at 1405.

The Act requires courts to release defendants who are pending trial on personal recognizance or on an unsecured appearance bond unless the government has presented clear and convincing evidence that there are no conditions that will "reasonably assure the appearance of the person as required for . . . the safety of any other person or the community." 18 U.S.C. §§ 3142(b), 3142(f)(2)(B). In other words, "the default position of the law . . . is that a defendant should be released pending trial." *United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C.2018) (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)). If the case involves a felony that is *not* a crime of violence but that involves the alleged possession of a dangerous weapon, upon motion by the government, the Bail Reform Act requires the Court to hold a hearing to determine whether any condition or combination of conditions will reasonably assure the defendant's appearance in court and the safety of persons and the community, 18 U.S.C. § 3142(f)(1)(E); 18 U.S.C. § 3142(f)(2)(A). When imposing a condition, or combination of conditions, the court must select the "least restrictive" conditions. 18 U.S.C. § 3142(c)(1)(B). Defendants who are charged with certain specified offenses are subject to a rebuttable presumption that no condition, or combination of conditions, can assure the defendant's appearance or ensure the safety of the community, *see* 18 U.S.C. § 3142(e). However, the presumption here is that Emanuel Jackson will be released pending trial unless the government can prove by clear and convincing evidence that pretrial detention is the *only* means by which the community's safety can be assured, 18 U.S.C. §3142(f)(2)(B); *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996), or can prove by a preponderance of the evidence that no conditions of release can assure the defendant's appearance at future court hearings. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988); *United States v. Hassanshahi*, 989 F. Supp. 2d 110 (D.D.C. 2013).

In determining whether the government has met this high burden, the Court must consider four factors: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence; (3) the defendant's character, including his physical and mental condition, family and community ties, past conduct, drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger posed to any person by release. 18 U.S.C. § 3142(g)(1)–(4). Emanuel Jackson's age, intellectual disability, strong ties to the community, lack of criminal history, and the unique circumstances of this offense all weigh in favor of release.

### i.    Nature and Circumstances of the Offense Charged

It is undisputed that the allegations are serious. Emanuel Jackson is accused of making contact with the exterior Plexiglass shield of a police officer. There is no injury alleged to have been caused, although this is *not to minimize the conduct*.  However, the nature and circumstances of this offense must be viewed through the lens of an event inspired by the President of the United States. Emanuel Jackson's behavior at the Capitol is indicative of an individual incited by the President to adopt behaviors based on an emotional rather than a rational basis.  On January 6, 2021, the President made "statements that encouraged—and foreseeably resulted in—imminent lawless action at the Capitol."[7]

### ii.    The Weight of the Evidence Against the Defendant

The evidence that Emanuel Jackson used a bat is incontrovertible. Whether the government can succeed in proving the *mens rea* of each of the specific offenses charged, however, is debatable. In any event, in determining whether conditions of release can ensure the safety of others, "[t]he weight of the evidence is the least important of the factors and the bail statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d

---

[7] https://degette.house.gov/sites/degette.house.gov/files/Impeachment%20Resolution.pdf

1118, 1121-22 (9th Cir. 1991) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)); accord *United States v. Jones*, 566 F. Supp. 2d 288, 292 (D.NY 2008).

### iii.    The History and Characteristics of the Defendant Including Mental Condition

"[A] defendant's past conduct is important evidence—perhaps the most important—in predicting his probable future conduct." *Pope v. United States*, 739 A.2d 819, 827 (D.C.App. 1999) (quoting *Cruz-Foster v. Foster*, 597 A.2d 927, 930 (D.C.1991)). Emanuel Jackson has never been arrested, used drugs or alcohol, and has no history of violent behavior. He is twenty years old[8], was born and raised in Washington D.C., and remains in high school because of his intellectual disabilities. Emanuel Jackson has substantial ties to the community including his mother and three siblings, all of whom reside in the Washington, D.C. area. However, because of family homelessness, he is currently a resident of an extended transitional housing program for homeless youth.[9]

### iv.    The Nature and Seriousness of the Danger that Would be Posed by the Defendant's Release

Electronic GPS monitoring, third-party custody, and 24-hour home confinement are sufficient to mitigate any risk to the community and to secure Emanuel Jackson's appearance in court. The executive staff at the extended transitional housing program would be appropriate third-party custodians. Staff members understand that they would be required to monitor his HISP curfew (24-hour home confinement), ensure that complies with all court orders, and facilitate his appearances in court. Emanuel Jackson understands that if he fails to follow the rules, the transitional facility would be required to report any infractions directly to the Court. The Project Director of the transitional facility has indicated that Emanuel Jackson remains

---

[8] See Gov't Ex. 5. Emanuel identified himself as 19 years old, as he had only turned twenty one month earlier.
[9] See Exhibit B (filed under seal)

enrolled and maintains his residence at the facility. There is no danger to the community if

Emanuel Jackson is released into the HISP.

## **CONCLUSION**

The Magistrate Judge's factual findings were clearly erroneous because the government

failed to meet its burden of showing by clear and convincing evidence that no conditions or

combination of conditions would adequately ensure the safety of the community. For the

foregoing reasons, and such other reasons as may be presented at a hearing[10], the order of

detention should be vacated and Emanuel Jackson should be released.

Respectfully submitted,

/s/ Brandi Harden

_____
Brandi Harden
Bar No. 470706
Counsel for Emanuel Jackson
Harden|Pinckney, PLLC
400 7th Street Suite 604
Washington, DC 20004
bharden@hardenpinckney.com
(202) 390-0374

---

[10] Counsel is unavailable, because of a medical appointment, on Friday, February 26, 2021, which is the current date of the preliminary hearing.

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2021, I caused a copy of the foregoing motion to be served on counsel of record via ECF.

/s/ *Brandi Harden*
_____
Brandi Harden, Esq.